COOK, ASSIGNEE, v. STONE ET AL.

1. **Mortgages:** QUESTION OF PRIORITY IN EQUITY: INNOCENT PUR-CHASER PROTECTED.   Where a loan was made upon real estate in-cumbered by an unrecorded mortgage, with the understanding and agreement between the holder of such mortgage and the agents who negotiated the loan, that the mortgage to be given to secure the loan should be first filed for record, and should constitute the first lien on the property, but the holder of the first mortgage, in violation of the agree-ment, filed his mortgage for record first, and the loan was consummated and the second mortgage taken without knowledge of the fraud, *held* that, as between the original parties and such subsequent holders of the securities as took them with notice of the facts, the mortgage given to secure the loan was the prior lien in equity; but, as the evidence in this case (see opinion) shows that the holder of the first mortgage took it for value, without notice of said agreement, and relying upon the facts as shown by the record, *held* further that, as between him and the holder of the mortgage given for the loan, his mortgage was properly decreed to be the prior lien.

*Appeal from Marshall Circuit Court.*

THURSDAY, APRIL 24.

THIS is an action in equity, and the controversy involves the question as to the priority of two mortgages upon certain real estate.   One of these mortgages is owned by the plaintiff,

and the other by the defendant, Lucas. The court decreed the mortgage of Lucas to be prior and superior, and the plaintiff appeals.

*T. Binford* and *J. H. Bradley*, for appellant.

*J. M. Parker* and *Sutton & Childs*, for appellees.

ROTHROCK, CH. J.—The mortgage now owned by the plaintiff was made by E. W. Stone to Chauncey L. Cook in February, 1878. It was made as security for a loan of $1,000. Cook was a non-resident, and had no personal connection with the loan. Brown & Binford, attorneys at law at Marshalltown, were his loan agents, and negotiated the loan for him.

It appears that C. W. Stone had formerly owned two city lots. He sold them to E. W. Stone, and held a mortgage upon them in the sum of $3,000 to secure purchase-money. It is quite satisfactorily shown from the evidence that C. W. Stone, the owner and holder of the $3,000 mortgage, called upon Brown and Binford, and negotiated for the $1,000 loan, and that he represented to them that he held the $3,000 mortgage, and agreed with them that it should not be filed for record until after the mortgage to Cook should be filed. In other words, it was agreed that the Cook mortgage should have priority over the $3,000 mortgage, and that it should so appear from the record. Under this promise and inducement, Brown & Binford made the loan. In violation of this agreement, C. W. Stone caused the $3,000 mortgage to be filed for record before the Cook mortgage. Both were filed on the same day and within a short time of each other, and Brown & Binford supposed that the Cook mortgage was first filed, until long afterwards.

If the controversy were between C. W. Stone and the present holder of the Cook mortgage, the rights of the parties would be easily determined. Stone could not be allowed to practice such a fraud, and this mortgage would be held to be the junior lien. But it appears that C. W. Stone was indebted

to one Kirby, and, after the loan of $1,000 was effected, Stone transferred the $3,000 mortgage to Kirby as collateral security for the debt he owed him. Kirby commenced an action for his debt by his attorneys, Brown & Binford, and, after obtaining judgment thereon, the $3,000 mortgage was turned over to the sheriff, and the same was sold by him in satisfaction of the judgment. Kirby was the purchaser of the mortgage at the sheriff's sale. Brown & Binford commenced an action for Kirby to foreclose the $3,000 mortgage. Cook was not made a party, but it was stated in the petition for the foreclosure that the Cook mortgage was a prior and superior lien upon one of the lots embraced in the mortgage. This lot, being what is called the residence lot, is the only one in controversy in this action. It was not stated in the petition why the Cook mortgage was prior to the other, and an examination of the petition might lead one to suppose that the Cook mortgage was first filed for record, and, indeed, we think the record in this case shows beyond much controversy that Brown & Binford then believed that such was the fact. An answer was filed in that case, and afterwards Lucas bought and took an assignment of the claim and cause of action of Kirby, and was substituted as plaintiff. The assignment was in writing, and no mention of the Cook mortgage is made therein. After the assignment, Parker, the attorney of Lucas, erased the recital in the petition as to the priority of the Cook mortgage, and took a decree without any reference thereto.

The question to be determined is, did Lucas, before purchasing the interest of Kirby, have notice of the agreement that the Cook mortgage should be the prior lien, or did he have knowledge of such facts as should have put him upon an investigation which would have resulted in notice.

It is claimed that C. W. Stone was agent of Lucas in the transaction of the transfer of the cause of action from Kirby to Lucas, and that the knowledge of the agent is the knowledge of the principal. But we do not think that such agency

is established. As it appears to us, the preponderance of the evidence negatives the fact of such agency.

J. M. Parker appeared as attorney in the defense of the action brought by Kirby. It appears that Lucas called upon Parker and advised him of his intention to buy out Kirby's right of action, and requested Parker to look it up for him. Parker knew of the allegations of the petition to the effect that the Cook mortgage was the prior lien. Parker made an examination of the records, and found that the Cook mortgage was junior to the $3,000 mortgage. Lucas also had Childs, an attorney who was in Parker's employment, to make an examination of the matter. Childs examined the record two or three times to assure himself that he was not mistaken, and he discovered that the $3,000 mortgage was filed for record at eleven o'clock, and the Cook mortgage at one o'clock of the same day. In addition to this, Childs testifies that, after making an examination in the recorder's office, he went to Brown & Binford, and met Mr. Brown at the foot of the stairs leading to his office, and asked him why he averred in the Kirby petition that the Cook mortgage was prior to the other, and he replied " because the records showed it was;" and upon Childs, telling him that it was the reverse of that, Brown blamed one Markley for misinforming him of the record; and on this information Lucas made his purchase. Childs testifies that after this interview he returned to Parker's office and reported his conversation with Brown, and the result of his examination of the records. It is true that Brown in his testimony denies having such a conversation with Childs, and says that he has no recollection of ever having any conversation with Mr. Childs at any time or place upon the subject of the priority of the Cook mortgage, and if he had such conversation he believes he would have remembered it. Both of the witnesses are credible, and we incline to think that Childs cannot be mistaken. He was seeking for information from the very source from which it was reasonable to expect it could be obtained. When he found the Cook

mortgage first on the record, it was very natural that he should go to Brown & Binford and make the very inquiry which he says he did make; and it is not so unreasonable to believe that Mr. Brown should fail to recollect the conversation as it would be to hold that Childs manufactured it. We do not think that Lucas should have been required to make further investigation. If he had inquired of Cook or Kirby, he would have acquired no further knowledge upon the subject, because it appears that they did not know anything about the agreement between Brown & Binford and C. W. Stone, and under all the facts we think the court correctly found that Lucas was not chargeable with notice, as claimed by plaintiff.

AFFIRMED.